450

THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v MARCELLUS THOMAS, Appellant.

Second Department, June 11, 1979

APPEARANCES OF COUNSEL

*David B. Perlmutter* for appellant.

*John J. Santucci, District Attorney (John Larsen* of counsel), for respondent.

## OPINION OF THE COURT

Titone, J. P.

The issue to which this opinion is addressed is whether, under the circumstances, the trial court erred in refusing (1) to permit the defense to call as its witness an individual named Whitlock who stated, *in camera,* that he would invoke his Fifth Amendment privilege against self incrimination if called for the purpose of giving testimony tending to exculpate the defendant, or in the alternative, (2) to give the jury an instruction neutralizing the adverse effect possibly emanating from defense counsel's unsuccessful attempt to call such witness on behalf of his client.

Based on events transpiring at the trial, I conclude that the trial court's determination with respect to Whitlock's testifying was correct. Accordingly, the judgment of conviction should be affirmed.

Appellant, Marcellus Thomas, was convicted after a jury trial of robbery in the first degree, criminal possession of a weapon in the second degree, and criminal possession of stolen property in the second degree. The charges stemmed from his actions in allegedly driving a stolen vehicle into a gas station and then robbing the attendant at gunpoint.

In his opening statement to the jury, defendant's attorney stated, *inter alia:* "[W]hat happened on that night is that he [appellant] obtained a car from Mr. Whitlock, and it was approximately maybe 4:05, 4:10 in the morning, maybe a little later, when he went to the gas station. Remember this robbery took place supposedly—we have no knowledge—at 3:50. At 4:39, he's [appellant's] in the gas station".

The person referred to by defense counsel in his opening statement, Alan Whitlock, was brought into court as the first witness for the defendant. During an *in camera* proceeding, both Whitlock and his attorney informed the court that other than answering questions as to his name and current address, which was an up-State prison, Whitlock intended to invoke his rights under the Fifth Amendment and would refuse to testify. As evidenced by the following colloquy between the trial court and defendant's attorney, the trial court refused to have Whitlock sworn as a witness:

"THE COURT: Okay, what did you intend to ask?

"MR. FINKEN: I intend to ask him things which I don't think I should be compelled at this point to disclose to the Court.

"THE COURT: If he is not going to answer any questions, I want you to disclose it because there's no point in having a witness stand up here before a jury and taking the Fifth Amendment when he's not going to answer any questions. I would not allow that, and I'm going to tell you the reason for it. You could bring almost anybody down here at any time to show the jury or say to the jury I'm going to take the Fifth Amendment and refuse to answer, and use that as some method to avoid certain things or make a jury believe that a defendant did something that somebody else did, or that a witness did something that somebody else did—a crime—and there is no basis for it. The man doesn't intend to answer any questions, and there's no basis for it, and I would not allow it before the jury."

The trial court also denied a defense request to have the prosecuting attorney advise the jury that if Whitlock had been called to the stand, he would have asserted his Fifth Amendment privilege.

Later during defendant's case, his attorney called one Willis Payne to the stand. At the time Payne was also in prison for an unrelated charge. Payne testified that some four months prior to the trial, while he, defendant and Whitlock were sharing a cell in the Queens House of Detention, they had a conversation in which Whitlock admitted both committing the robbery of the gas station attendant and later giving or loaning the stolen automobile to defendant.

It should also be mentioned that although Payne's testimony about Whitlock's admissions in the cell may have constituted an evidentiary foundation for the recalling of Whitlock as a defense witness, at no time after the conclusion of Payne's testimony did defense counsel renew his application to have Whitlock take the stand or request the court to give an instruction neutralizing the latter's failure to testify. Moreover, defendant, who testified in his own behalf before Payne took the stand, never alluded to the conversation he allegedly had with Whitlock in Payne's presence four months earlier in the Queens House of Detention. The trial transcript also reveals that defendant's attorney called one David Cook, who would have probably been the last witness for the defense had he been allowed to testify. However, after the trial court was advised that Cook, who was also in prison at the time, would, like Whitlock, assert his Fifth Amendment privilege and refuse to testify, it refused to have him sworn as a witness,

and would not advise the jury why Cook was not taking the stand.

With respect to allowing a defense witness who indicated beforehand that he would invoke the Fifth Amendment on the witness stand, to be sworn as a witness, appellant contends, *inter alia,* that Whitlock's stated intention in that regard was not determinative of his right to call Whitlock as a witness. Support in this State for such argument is found in *People v Sullivan* (43 AD2d 55) and *People v Allen* (246 App Div 612). " 'The privilege granted a witness to refuse to testify on the ground that his testimony would tend to incriminate or degrade him is merely an option of refusal and not a prohibition of inquiry * * * It may be that important facts might have been brought out to the advantage of the defendant, in no way self-incriminating' " *(People v Sullivan, supra,* p 57, quoting *People v Allen, supra).*

However, subsequent to the *Allen* and *Sullivan* cases, the Court of Appeals in *People v Sapia* (41 NY2d 160, cert den 434 US 823), briefly addressed this issue. It concluded (pp 163-164) that there was no error in the trial court's barring a person who intends to invoke his privilege against self incrimination from being called to the stand: "Additionally, defendant contends that it was prejudicial error to deny defense counsel's request to call Fodderell [an informer] to the witness stand and to put him to his claim of privilege against self incrimination in the presence of the jury. We have no hesitancy to state our conclusion that there was no abuse of discretion by the Trial Judge in this regard. *(United States v Martin,* 526 F2d 485, 487.)"

The Federal authority on which this State's highest court relied in *Sapia,* to wit, *United States v Martin* (526 F2d 485, 487), is one of a line of Federal cases in which it has been held that it is within the discretion of the trial court to refuse to allow a person to be called to the witness stand and be compelled to invoke his Fifth Amendment privilege in the presence of the jury (see, also, *United States v Lacouture,* 495 F2d 1237, cert den 419 US 1053; *United States v Johnson,* 488 F2d 1206; *Bowles v United States,* 439 F2d 536, cert den 401 US 995). The rationale of such a ruling is that neither the prosecution nor the defense has the right to benefit from inferences which the jury may draw from the witness' assertion of the privilege, either alone or in conjunction with questions that have been put to him *(United States v Johnson,*

*supra,* p 1211; *Bowles v United States, supra,* p 541). Since a witness asserting his privilege is not subject to cross-examination and is not required to justify his fear of incrimination, the assertion of the privilege is of dubious probative value and the inferences drawn therefrom are not reliable *(Bowles v United States, supra,* p 542).

In line with the reasoning of the Federal courts on this issue, it must be stressed that a litany of answers, such as, "I refuse to answer on the ground that I may incriminate myself", are not responsive to questions posed by defense counsel ostensibly to ascertain whether the witness committed the act for which his client is being tried. Yet such unresponsive answers, wholly nonevidentiary in nature, might nevertheless be erroneously considered by a jury, either by themselves or with other evidence, as proof of a defendant's innocence (cf. *Fletcher v United States,* 332 F2d 724). As graphically stated by Judge LEVENTHAL of the United States Court of Appeals for the District of Columbia Circuit, in *Bowles v United States* (439 F2d 536, 541-542, *supra):* "The jury may think it high courtroom drama of probative significance when a witness 'takes the Fifth.' In reality the probative value of the event is almost entirely undercut by the absence of any requirement that the witness justify his fear of incrimination and by the fact that it is a form of evidence not subject to cross-examination."

There is also another serious objection to such procedure. In asking questions of a witness who has announced his intention to assert his Fifth Amendment privilege, the thrust of such questions being to suggest that the witness and not the defendant committed the crime in issue, defense counsel becomes, in effect, an unsworn witness for his client. Such tactic is analogous to a prosecutor asking a primary witness for the prosecution before a Grand Jury a series of leading questions designed solely to elicit "yes" or "no" answers to the detriment of targets of the investigation (see *People v Rao,* NYLJ, Dec. 4, 1975, p 11, col 5, revd on other grounds 53 AD2d 904 [see dissenting mem of TITONE, J., pp 908-910]).

However, Federal juridical bodies have also recognized that sans an explanation or cautionary admonition, a jury might conceivably draw an adverse inference from preventing a person from taking the stand for asserting his or her rights under the Fifth Amendment. To counter such possibility, a salutary rule has evolved in the Federal courts, to wit, that

*when requested,* a trial court should give a "neutralizing instruction" calculated to reduce the danger that the jury will in fact draw an adverse inference from the absence of such a witness *(Bowles v United States,* 439 F2d 536, *supra; United States v Lacouture,* 495 F2d 1237, *supra; United States v Martin,* 526 F2d 485, *supra).* The following instruction given by the trial court in *United States v Martin (supra),* and approved on appeal by the Tenth Circuit, is illustrative of the Federal rule (pp 486-487):

"There has been testimony in this case about an informant named Samuel Hudson. As a result of a hearing held outside the presence of the jury, the Court has determined that Mr. Hudson is not available to be called as a witness by either side in this case.

"The jury may not draw any inference from the fact that Samuel Hudson did not appear as a witness in this case."

In my opinion such Federal procedure should be formally recognized and adopted by courts in this State. Whether a neutralizing instruction should also include a statement that the person would have asserted his Fifth Amendment privilege had he been sworn as a witness, should best be left to the discretion of the trial court. In this regard it should be mentioned that prior to citing *United States v Martin (supra)* for the proposition that no error was committed by the trial court in preventing a person from taking the stand who intended to assert his Fifth Amendment privilege, the Court of Appeals noted in *People v Sapia* (41 NY2d 160, 163, *supra):* "The defense requested permission to call Fodderell [an informer] to the stand, to ask questions and to require the witness to exercise his constitutional privilege in the presence of the jury. *This request was denied, but the court did instruct the jury that Fodderell had been called as a defense witness and in its absence had invoked his privilege against self incrimination.* The jury was advised not to speculate about the reasons for Fodderell's exercise of his constitutional rights, and the Fodderell chapter was closed." (Emphasis supplied.)

Returning to the matter herein, it is true that Alan Whitlock stated that he would assert his Fifth Amendment privilege against self incrimination if called to the witness stand, and also that he was the first witness to be called on behalf of defendant. Moreover, as mentioned earlier, defense counsel in his opening statement to the jury did contend that his client borrowed the stolen car in which defendant was arrested,

after the robbery of the service station attendant. However, at the time Whitlock was called to testify, no evidence had been previously adduced, such as eyewitness testimony, or a declaration by Whitlock against his penal interest, that Whitlock, and not defendant, had committed the crime (cf. *People v Brown,* 26 NY2d 88; *People v Settles,* 46 NY2d 154). Thus, since no evidentiary foundation had been previously laid to justify a neutralizing instruction, the trial court's refusal to give one on that occasion was proper. Further justifying the position then taken by the trial court was defense counsel's refusal to disclose the content of the questions he proposed to ask Whitlock and the latter's purported role in the robbery.

With respect to the subsequent testimony of Willis Payne as to Whitlock's prior self incriminating remarks in the cell constituting the required evidentiary foundation for a neutralizing instruction explaining Whitlock's failure to testify, the record reveals that after Payne's testimony was elicited, no attempt was made by defense counsel either to renew his motion to place Whitlock on the stand or to have such absence explained to the jury. Whether defense counsel's failure to renew his motion vis-à-vis Whitlock at such juncture was inadvertent or a deliberate trial tactic, cannot be gleaned from the record. Conceivably defense counsel may have conjectured that the prosecution's failure to call Whitlock to the stand and have him deny his guilt, would raise a reasonable doubt in the jurors' minds as to defendant's involvement. In *Bowles v United States* (439 F2d 536, 542, *supra),* Judge LEVENTHAL made the following astute observation: "There are meaningful tactical reasons why a defense trial counsel might elect not to seek such an [neutralizing] instruction." To that statement may be added the caveat that there are also meaningful tactical reasons why a defense counsel might elect to seek such an instruction at one stage of the trial, and elect not to seek it at another stage.

In connection with the second prospective witness, David Cook, who also stated he would assert his Fifth Amendment privilege if placed on the stand, the record likewise reveals that no information was given the trial court as to his alleged role in the crime, nor was any evidentiary foundation laid to justify any neutralizing instruction on his failure to testify. Thus, the trial court's ruling as to him was also proper.

Other contentions presented by appellant's counsel have

been considered and have been found to be without merit. The judgment of conviction should therefore be affirmed.

RABIN, GULOTTA and COHALAN, JJ., concur.

Judgment of the Supreme Court, Queens County, rendered April 27, 1977, affirmed.