733 So.2d 662 (1999)
STATE of Louisiana
v.
Anwar HADDAD Sentenced as ("Anwar G. Haddad").
No. 98-KA-1200.
Court of Appeal of Louisiana, Fifth Circuit.
March 30, 1999.
*663 Paul D. Connick, Jr., District Attorney, Terry M. Boudreaux, Ellen S. Fantaci, Thomas S. Block, Assistant District Attorneys, Gretna, for Plaintiff/Appellee.
Joseph V. Dirosa, Jr., New Orleans, for Defendant/Appellant.
Panel composed of Judges SOL GOTHARD, THOMAS F. DALEY and MARION F. EDWARDS.
GOTHARD, Judge.
Defendant, Anwar Haddad, was convicted of being a convicted felon in possession of a firearm in violation of LSA-R.S. 14:95.1, and sentenced accordingly. He appeals the conviction and sentence to this court. The record shows that on February 21, 1998, the Jefferson Parish District Attorney filed a bill of information charging defendant, Anwar Haddad, with one count of possession of a firearm by a convicted felon. On March 20, 1998, defendant was arraigned, and pled not guilty. On April 21, 1998, the district attorney filed an amended bill of information, adding a second count of possession of a firearm by a convicted felon. Defendant was arraigned on April 24, 1998 as to the amended bill, and pled not guilty.
Defendant was tried before a jury of twelve on May 21, 1998. The jury was deadlocked and unable to reach a verdict on count one; but, returned a verdict of not guilty as to count two. Defendant was retried as to count one on June 24, 1998, and the jury found him guilty as charged. *664 Defendant filed a motion for new trial on August 13, 1998, and the motion was heard and denied on that day. Defendant thereafter waived statutory delays and was sentenced to serve ten years at hard labor, without benefit of parole, probation, or suspension of sentence. On that day, defendant entered both an oral and a written motion for appeal.

FACTS
At 12:39 p.m. on April 29, 1997, Sergeant Brady Buckley of the Jefferson Parish Sheriff's Office was on routine patrol in Metairie, driving a marked police unit. While traveling north on North Causeway Boulevard, he saw a vehicle heading in the wrong direction on a one-way exit ramp to the I-10 Service Road. The vehicle made a U-turn in front of Buckley's car, and proceeded north on North Causeway at a high rate of speed. The officer pursued the vehicle with the intention of ticketing the driver for speeding and driving the wrong way on a one-way street.
The vehicle slowed as it approached the overpass at Veterans Boulevard, but began to make erratic lane changes. Buckley activated his police lights and siren, but the vehicle did not stop immediately. Instead, it crossed three lanes of traffic and turned into the parking lot at Lakeside Shopping Center. The vehicle then slowly traveled another two hundred to three hundred yards before stopping. Buckley noted there were two men in the vehicle. The driver, later identified as Lionel Smith, exited immediately. The officer ordered the man to walk toward him.
When Smith reached the police unit, he volunteered that he had no driver's license or identification. Smith stated that the car he was driving belonged to his girlfriend, and that he did not know where the registration was. Buckley and Smith approached the car to look for registration papers. Defendant Anwar Haddad, who was seated in the passenger seat, pulled a black handgun from his waistband and pointed it at Buckley. The officer drew his weapon and ordered defendant to "freeze." Defendant dropped the gun onto the floorboard of the vehicle. In compliance with police procedure, Buckley used Smith as a "human shield," and made his way backwards to the safety of the police unit.
Buckley handcuffed Smith and placed him in the back seat of the police car. The officer ordered defendant to exit the vehicle and lie face down on the ground. Defendant complied, and the officer handcuffed him. Buckley retrieved a loaded.380 Lorcin semi-automatic handgun from inside the vehicle. The officer found the gun was listed as stolen on the police computer.
Buckley advised the two men they were under arrest. A search using the police computer revealed Smith had outstanding attachments in Kenner. The officer also learned defendant had prior convictions, and charged him with possession of a firearm by a convicted felon.[1] Buckley issued Smith three traffic citations.
Samir Haddad, defendant's brother, testified on his behalf. Samir stated the.380 Lorcin was his, and that he used it for his own protection when working at the family's supermarket. He further testified that the car driven by Smith belonged to his (Samir's) girlfriend, Andrea. According to Samir, he rode in the car the night before defendant's arrest, and inadvertently left the gun under the seat. Samir stated defendant has never used the gun. Issa and Lucy Haddad, defendant's parents, also testified at trial that the gun belonged to Samir, and that they had never seen it in defendant's possession.
Defendant testified that Lionel Smith picked him up on the morning of April 29, 1997, in a vehicle belonging to Samir's girlfriend. The men ran errands together *665 for about two hours before they were stopped by Sergeant Buckley. When Smith stopped the car, he tossed the gun to defendant and advised him to run. Defendant testified that he knew it was illegal for him to possess a weapon, so he placed the gun beside his leg. Defendant stated that he notified Buckley there was a gun in the car, and that the officer then left him in the car with the gun until he had handcuffed Smith.
In brief to this court, defendant assigns one error. He maintains the trial court committed reversible error when it failed to give a "neutralizing" instruction to the jury regarding the failure of a witness to testify at trial following a ruling by the court that the witness would not be allowed to testify because that witness had invoked his Fifth Amendment privilege against self-incrimination. Defendant's argument in this regard relates to the fact that witness, Lionel Smith, invoked his Fifth Amendment privilege against selfincrimination out of the jury's presence, and did not testify at trial.
On June 24, 1998, prior to jury selection, Lionel Smith was sworn in in open court. Smith's attorney stated for the record that his client had decided to invoke his Fifth Amendment privilege against self-incrimination. The court then excused Smith, determining that it would be unnecessary for the witness to reassert his Fifth Amendment privilege in the jury's presence. Defendant's attorney objected, arguing that his case would rest primarily on the assertion that it was Smith who possessed the gun at issue, and that defendant would be prejudiced if jurors were allowed to speculate as to why Smith was not called to testify. The court noted defendant's objection.
At trial defense counsel reasserted his objection arguing that, because several witnesses had made mention of Smith's involvement in events leading up to his arrest, jurors would be left to speculate as to why defendant did not call him as a witness. Counsel asserted defendant was entitled to an instruction which would neutralize any inference jurors might draw from his failure to produce Smith at trial. The court again noted the objection, but reserved its ruling on the matter. After the defense rested its case, the judge ruled that she would give no instruction regarding Lionel Smith's failure to testify.
Defendant concedes that the trial court properly allowed Smith to invoke his Fifth Amendment privilege out of the jury's presence. The jurisprudence indeed favors the determination of claims of privilege outside the jury's presence, considering the undue weight a jury might give such a claim. In State v. Wille, 559 So.2d 1321, 1337-1338 (La.1990), the court stated:
This court has recognized that it is error to allow the prosecutor to call before the jury a witness who he knows will invoke the privilege against self incrimination, when there is no other purpose for calling the witness except to have the jury draw evidentiary inferences from the fact that the witness claimed the privilege.
See also, State v. Berry, 324 So.2d 822, 830 (La.1975), cert. denied, 425 U.S. 954, 96 S.Ct. 1731, 48 L.Ed.2d 198 (1976); State v. Gerard, 96-366 p. 5 (La.App. 5 Cir. 11/14/96), 685 So.2d 253, 258.
The United States Supreme Court has established that the Fifth Amendment requires, upon proper request, that a trial judge instruct the jury that no adverse inference can be drawn from a defendant's failure to testify. Carter v. Kentucky, 450 U.S. 288, 101 S.Ct. 1112, 67 L.Ed.2d 241 (1981). However, there is little jurisprudence in support of defendant's contention that it is reversible error for a trial court to refuse a defendant's request for an instruction explaining a witness's failure to testify.
In support of his argument, defendant cites federal cases in which the reviewing courts approved of such a neutralizing instruction. In Bowles v. United States, 439 *666 F.2d 536 (D.C.Cir.1970), cert. denied, 401 U.S. 995, 91 S.Ct. 1240, 28 L.Ed.2d 533 (1971), the defendant was prevented from calling a witness to the stand because the witness intended to invoke his Fifth Amendment privilege. On review, the court found the defendant was entitled to request an instruction that the jury should draw no inference from the absence of the witness because he was not available to either side. The court further found that, had either party made such a request, it would have been error for the trial court to refuse it. Id., 439 F.2d at 542.
In United States v. Martin, 526 F.2d 485 (10th Cir.1975), the defendant challenged the trial court's decision to prevent the defendant from putting a confidential informant on the stand to compel him to invoke his Fifth Amendment privilege in the jury's presence. On review, the court found the trial court acted properly in giving a "neutralizing" instruction sufficient to put the matter in context. There are no recent federal cases which directly address this issue.
Neither the Louisiana Supreme Court, nor this court has directly addressed the question raised here. In State v. Gerard, supra, the defendant argued that the trial judge erred in failing to instruct the jury as to the relevance of a codefendant's invocation of his Fifth Amendment privilege. However, this court did not review the issue, as it was not properly briefed.
In the instant case, the testimony of Sergeant Buckley showed Lionel Smith was closely involved in the events leading up to defendant's arrest. Moreover, the main thrust of the defense is that it was Smith who initially possessed the weapon. Defendant argues that failure of the defendant to call Smith to the stand at trial, without an explanation of why he was absent, caused jurors to form negative inferences regarding defendant.
C.Cr.P. article 802 provides that the scope of the general charge given to the jury shall be as follows:
(1) As to the law applicable to the case;
(2) That the jury is the judge of the law and of the facts on the question of guilt or innocence, but that it has the duty to accept and to apply the law as given by the court; and
(3) That the jury alone shall determine the weight and credibility of the evidence.
State v. Crossley, 94-965 (La.App. 5 Cir. 3/15/95), 653 So.2d 631, 635-636.
C.Cr.P. article 807 provides that in addition to the general charges, a defendant may request special jury charges. That article requires that such requested charges must be given by the court "if it does not require qualification, limitation, or explanation, and if it is wholly correct and pertinent. It need not be given if it is included in the general charge or in another special charge to be given". In the general charge the trial court stated:
You must determine the facts only from the evidence presented. The evidence which you should consider consists of the testimony of witnesses and any other evidence which the Court has permitted the parties to introduce.
* * * * * *
You are not bound to decide any issue of fact in accordance with the number of witnesses presented on that point. Witnesses are weighed and not counted. The test is not which side brings the greater number of witnesses before you, or presents the greater quantity of evidence, but rather which witnesses and which evidence appeals to your minds as being the most convincing.
* * * * * *
The defendant is not required by law to call any witnesses or produce any evidence.
Although the special charge was not specifically included in the general charge, read as a whole the instructions adequately inform the members of the jury that they are to consider only the evidence *667 presented. Even assuming arguendo that the trial court erred in failing to give the requested charge, the error is harmless.
An erroneous jury instruction is subject to harmless error review. State v. Jynes, 94-745 (La.App. 5 Cir. 3/1/95), 652 So.2d 91, 98. The appropriate standard for determining harmless error is "`not whether, in a trial that occurred without the error, a guilty verdict would surely have been rendered, but whether the guilty verdict actually rendered in the instant trial was surely unattributable to the error.'" State v. James, 95-566, p. 4 (La. App. 5 Cir. 11/28/95), 665 So.2d 581, 584, citing Sullivan v. Louisiana, 508 U.S. 275, 279, 113 S.Ct. 2078, 2081, 124 L.Ed.2d 182 (1993).
In Richardson v. Lucas, 741 F.2d 753 (5th Cir.1984), the court found the trial court committed harmless error in refusing, following a proper request, to instruct the jury not to draw an unfavorable inference from the defendant's refusal to testify. The court concluded there was no reasonable possibility that such an instruction would have affected the verdict.
In the instant case, Sergeant Buckley testified that he saw defendant take the gun from his waistband and point it at him. The jury apparently found the officer's testimony credible and based its verdict of guilty on that testimony. Accordingly, the outcome of the case was not attributable to the trial court's refusal to give a "neutralizing" instruction. We find no merit in the defendant's assignment of error.
We note on an errors patent review that the defendant's sentence is illegally lenient in that it does not impose a fine as required pursuant to LSA-R.S. 14:95.1 B. However, since the state has not raised the issue this court may not set aside the sentence. State v. Fraser, 484 So.2d 122 (La.1986).
For the foregoing reasons, we affirm defendant's conviction and sentence.
AFFIRMED.
NOTES
[1] At trial, the parties stipulated to the admission of State's Exhibit 1, a certified copy of defendant's 1997 conviction for attempted unauthorized entry of an inhabited dwelling, which the state offered as the predicate felony under LSA-R.S. 14:95.1.