767 So.2d 682 (2000)
STATE of Louisiana
v.
Anwar HADDAD (sentenced as "Anwar G. Haddad").
No. 99-K-1272.
Supreme Court of Louisiana.
February 29, 2000.
Rehearing Denied May 5, 2000.
*683 Joseph Vincent DiRosa, Jr., New Orleans, Counsel for Applicant.
Richard P. Ieyoub, Attorney General, Paul D. Connick, Metairie, Thomas Stanford Block, New Orleans, Terry Michael Boudreaux, Gretna, Ellen Steman Fantaci, New Orleans, Counsel for Respondent.
JOHNSON, Justice.[*]
Defendant, Anwar Haddad, was convicted in Jefferson Parish pursuant to LSA-R.S. 14:95.1, which makes it unlawful for a convicted felon to possess a firearm or carry a concealed weapon. We granted this writ of certiorari to determine whether the trial court erred in failing to give the jury a "neutralizing instruction" to neutralize any inference jurors might draw from the defendant's failure to call the driver of the vehicle in which he was a passenger at the time of his arrest as a witness at trial. After a review of federal precedents and jurisprudence from other states, we conclude that the defendant was entitled to have the trial court give a neutralizing instruction and that the failure to do so was not harmless error. Accordingly, we reverse the court of appeal's decision and the defendant's conviction, and we remand this case to the trial court for a new trial.

FACTS AND PROCEDURAL HISTORY
The defendant, Anwar Haddad, was a passenger in an automobile which was stopped by Sergeant Brady Buckley, an officer on routine patrol for the Jefferson Parish Sheriff's Office. Officer Buckley testified that as he was traveling on Causeway Boulevard in Metairie, he witnessed a vehicle proceeding in the wrong direction of a one-way exit ramp to the Interstate 10 Service Road. The officer stated that, as he pursued the vehicle, the driver began to make erratic lane changes. At that point, Officer Buckley activated his police lights and siren. The vehicle did not immediately stop, but crossed three lanes of traffic and turned into the parking lot of Lakeside Shopping Center on Veterans Boulevard.
After the vehicle stopped, the driver, who was later identified as Lionel Smith, exited the vehicle immediately. The officer ordered Smith to walk toward him, and the defendant remained in the vehicle in the passenger seat. The officer testified that he approached the vehicle with Smith to look for registration papers. The officer stated that, as he approached the vehicle, the defendant pulled a weapon from the waistband of his pants and pointed it at him.
In contrast to Officer Buckley's testimony, the defendant testified that when Smith stopped the car, Smith tossed the gun to him and told him to run. The defendant also testified that, since he knew it was illegal for him to possess a weapon, *684 when Smith tossed the gun in his lap, he "grabbed it and put it on the floor" and made no attempt to conceal it (Tr. 72-73). The defendant further stated that when Officer Buckley walked to the vehicle to ask him Smith's name, he informed the officer that there was a gun on the floor of the vehicle. According to the defendant's testimony, the gun remained on the floor of the vehicle, and the officer never saw it in his "possession."[2]
After placing both the driver and the defendant in handcuffs, the officer retrieved the handgun, a loaded .380 Lorcin semi-automatic, from inside of the vehicle. The gun was listed as stolen on the police computer, and both the defendant and Smith were arrested. After it was determined that Haddad had prior convictions, he was charged with possession of a firearm by a convicted felon. LSA-R.S. 14:95.1.
The defendant's brother, Samir Haddad, testified at trial that the vehicle was owned by his girlfriend. He also testified that the handgun found in the vehicle belonged to him and that he had never seen his brother in possession of the weapon. He stated that he had inadvertently left the weapon underneath the seat of the vehicle. The defendant's parents testified that the gun belonged to Samir and that they had never seen it in the defendant's possession.
On May 21, 1998, the defendant was tried by a jury. Lionel Smith took the stand and invoked this Fifth Amendment privilege against self-incrimination, and the jury was unable to reach a verdict.
The defendant was retried on June 24, 1998. Prior to jury selection in the second trial, Lionel Smith was sworn in open court, and his attorney stated for the record that his client had decided to invoke his Fifth Amendment privilege against self-incrimination. The court would not allow Smith to reassert his Fifth Amendment privilege in the jury's presence and excused him. The defendant's attorney objected, arguing that his case would rest primarily on the assertion that it was Smith who possessed the gun at issue and that the defendant would be prejudiced if jurors were allowed to speculate as to why Smith was not called to testify. Defense counsel's objection was noted. During the trial, the defendant's attorney asserted that he was entitled to a "neutralizing" instruction which would neutralize any inference jurors might draw from his failure to produce Smith as a witness at trial. Defense counsel requested that the jury be informed that Smith "had been called and that, through a ruling of the Court, he would not be permitted to testify, or something to that effect...." (Tr. 85).
The judge ruled that she would give no instruction regarding Smith's failure to *685 testify and gave the following general charge, in pertinent part:
You must determine the facts only from the evidence presented. The evidence which you should consider consists of the testimony of witnesses and any other evidence which the Court has permitted the parties to introduce.
You are not bound to decide any issue of fact in accordance with the number of witnesses presented on that point. Witnesses are weighed and not counted. The test is no which side brings the greater number of witnesses before you, or presents the greater quantity of evidence, but rather which witnesses and which evidence appeals to your minds as being the most convincing.
The defendant is not required by law to call any witnesses or produce any evidence.
(Tr. 97).
The jury found the defendant guilty as charged. On August 13, 1998, the trial court denied the defendant's motion for a new trial. After the defendant waived statutory delays, he was sentenced to serve ten years at hard labor, without benefit of parole, probation, or suspension of sentence.
The defendant appealed his conviction, and the court of appeal affirmed the trial court's ruling. The court of appeal specifically held that although the trial court did not give a "neutralizing" instruction to the jury, the jury instructions, as a whole, adequately informed the jury that they were to consider only the evidence presented. The court of appeal further held that even if the refusal to give the instruction was erroneous, the error was harmless. State v. Haddad, 98-1200 (La.App. 5 Cir. 3/30/99), 733 So.2d 662. The defendant filed an application for certiorari with this court, and by order dated October 15, 1999, we granted his writ application. State v. Haddad, 99-1272 (La.10/15/99), 748 So.2d 459.

DISCUSSION
In his only assignment of error, the defendant argues that the trial court erred by refusing to give a "neutralizing" instruction to the jury regarding the failure of Lionel Smith to testify at trial following a ruling by the court that Smith would not be allowed to testify because he had invoked his Fifth Amendment privilege against self-incrimination.
We note, as a preliminary matter, the State's argument that the requested jury instruction was not preserved for appeal because the defendant failed to comply with the writing requirement for jury instructions in LSA-C.Cr.P. art. 807, which provides, in pertinent part:
The state and the defendant shall have the right before argument to submit to the court special written charges for the jury. Such charges may be received by the court in its discretion after argument has begun. The party submitting the charges shall furnish a copy of the charges to the court.
The state argues that, because defense counsel did not submit the requested charge in writing, the trial court was not required to grant the defendant's request. See State v. Weems, 358 So.2d 285 (La. 1978); State v. Ford, 608 So.2d 1058 (La. App. 1 Cir.1992); State v. Corley, 97-235 (La.App. 3 Cir. 10/8/97), 703 So.2d 653; writ denied, 97-2845 (La.3/13/98), 712 So.2d 875.
LSA-C.Cr.P. art. 801 provides that a party may assign as error the failure to give a jury charge so long as the objection thereto is made "before the jury retires or within such time as the court may reasonably cure the alleged error." Additionally, in State v. Henderson, 362 So.2d 1358 (La.1978), this court held that when the trial judge entertained numerous oral requests and objections by the defendants, the judge had dispensed with the requirement that special charges be in writing and had tacitly agreed to consider such instructions as orally proposed.
*686 Here, defense counsel objected, on the record, to the court's failure to instruct the jury not to draw any inference from Smith's failure to testify numerous times during the trial, and the trial court noted his objections. The trial court repeatedly acknowledged those objections. Furthermore, the transcript demonstrates that submission of the requested instruction in writing would have been a futile effort on the part of the defense counsel, since the trial court had already denied his request for a neutralizing instruction at least three times. We hold that by repeatedly noting counsel's objection, the trial court tacitly waived the writing requirement contained in LSA-C.Cr.P. art. 807.
In his brief, the defendant claims that his Sixth Amendment right to present Lionel Smith as a witness in the second trial was abrogated by the trial court's refusal to allow Smith to take the stand. As a general proposition, when faced with resolving the tension between a witness' Fifth Amendment privilege against self-incrimination and a defendant's Sixth Amendment right to present a defense, this court has consistently recognized the witness's right not to incriminate himself. State v. Brown, 514 So.2d 99 (La.1987); cert. denied 486 U.S. 1017, 108 S.Ct. 1754, 100 L.Ed.2d 216 (1988), reh'ing denied, 487 U.S. 1228, 108 S.Ct. 2888, 101 L.Ed.2d 923 (1988); State v. Edwards, 419 So.2d 881 (La.1982); State v. Mattheson, 407 So.2d 1150 (La.1981); cert. denied, 463 U.S. 1229, 103 S.Ct. 3571, 77 L.Ed.2d 1412 (1983); reh'ing denied, 463 U.S. 1249, 104 S.Ct. 37, 77 L.Ed.2d 1456; State v. Coleman, 406 So.2d 563 (La.1981). Moreover, this court has held that it is impermissible to knowingly call a witness who will claim a privilege, "for the purpose of impressing upon the jury the fact of the claim of privilege." See State v. Wille, 559 So.2d 1321 (La.1990); reh'ing denied, 595 So.2d 1149 (La.1992); cert. denied, 506 U.S. 880, 113 S.Ct. 231, 121 L.Ed.2d 167 (1992); reh'ing denied, 506 U.S. 1016, 113 S.Ct. 645, 121 L.Ed. 575 (1992); State v. Berry, 324 So.2d 822 (La.1975), cert. denied, 425 U.S. 954, 96 S.Ct. 1731, 48 L.Ed.2d 198 (1976). Federal courts have also rejected a defendant's claim of error based upon the denial of his request that a witness assert his claim of privilege in the presence of the jury. See United States v. Lacouture, 495 F.2d 1237 (5th Cir.1974); cert. denied, 419 U.S. 1053, 95 S.Ct. 631, 42 L.Ed.2d 648 (1974); Namet v. United States, 373 U.S. 179, 83 S.Ct. 1151, 10 L.Ed.2d 278 (1963).
We adhere to our holdings in Wille, supra and Berry, supra. We hold that the trial court did not err in disallowing Smith to take the stand for the sole purpose of invoking his Fifth Amendment privilege against self-incrimination in the presence of the jury.
The question of whether a defendant is entitled to a "neutralizing" instruction has been raised once before in this state. In State v. Gerard, 96-366 (La.App. 5 Cir. 11/14/96), 685 So.2d 253, the defendant alleged that the trial court erred by failing to instruct the jury regarding a codefendant's invocation of his Fifth Amendment privilege. However, the court deemed the issue waived because of defense counsel's failure to address the issue in actual argument. The question presents a res nova issue in this court. Therefore, it is necessary to review jurisprudence in other jurisdictions.
Many federal and state courts have addressed the issue and have held that in circumstances in which the defendant is denied his request that a witness take the stand to assert his claim of privilege, a "neutralizing" instruction should be given to the jury at the defendant's request.
In the leading case on this issue, Bowles v. United States, 439 F.2d 536 (D.C. en banc, 1970); cert. denied, 401 U.S. 995, 91 S.Ct. 1240, 28 L.Ed.2d 533 (1971), the court upheld the trial court's refusal to permit the defendant to call a witness to the stand after it had been ascertained, outside of the presence of the jury, that the witness intended to intended to invoke *687 his privilege against self-incrimination. Although defendant's counsel did not request a neutralizing instruction, the court stated:
[the] trial judge could properly have given a neutralizing instruction, one calculated to reduce the inference from the absence of such a witness.... Had either counsel requested the court to instruct the jury that they should draw no inference from [the witness's] absence because he was not available to either side, it would have been error to refuse this instruction.
Id. at 542.
In United States v. Martin, 526 F.2d 485 (10th Cir.1975), the trial judge refused to allow the defendant to put a witness on the stand to compel the witness to invoke his Fifth Amendment privilege in the presence of the jury. However, the trial court later gave the jury a neutralizing instruction, stating, "the jury may not draw any inference from the fact that [the witness] did not appear as a witness in this case." The court of appeal determined that the instruction "was proper and served to put the entire matter in context." Id. at 487.
Courts in other states have also addressed the issue presented herein and have determined that a "neutralizing" instruction, when requested, is proper in a situation in which a witness asserts his Fifth Amendment privilege before trial and is therefore unavailable to testify.
In State v. Kirk, 72 Ohio St.3d 564, 651 N.E.2d 981 (Ohio 1995), cert. denied, 516 U.S. 1097, 116 S.Ct. 823, 133 L.Ed.2d 766 (1996), the court held that when a defendant is unable to call a witness to the stand because of the witness's intention to assert the Fifth Amendment privilege against self-incrimination, the defendant is entitled to request an instruction that the jury should draw no inference from the absence of the witness because the witness was not available to either side. The court further stated, "Such an instruction is intended to reduce the danger that the jury would, in fact, draw an inference from the absence of a witness who could corroborate the defendant's testimony." Id. at 984.
In State v. McGraw, 129 N.J. 68, 608 A.2d 1335 (1992), the New Jersey Supreme Court held that, the trial court was not required to give an instruction that the defendant was entitled to a favorable inference from a witness's refusal to testify based on the invocation of his Fifth Amendment privilege. However, the court decided that trial court was required to give an unsolicited instruction that the jury was not draw no inference from the witness's failure to testify. The court stated that such an instruction is "aimed at foreclosing an unfavorable inference that could counter whatever exculpatory evidence is presented through other witnesses available for cross-examination by the prosecution." Id. at 1340.[3]
In People v. Dyer, 425 Mich. 572, 390 N.W.2d 645 (1986), the court stated:
Where a party does not produce or call a co-defendant or a witness to substantiate a claim of innocence or guilt, the jury may draw an adverse inference from the absence of this evidence. A neutralizing instruction explains to the jurors that they may not draw an inference from the absence of certain witnesses or engage in speculation about the possible nature of their testimony. Such an instruction, while not mandatory, should be given when requested to avoid prejudice.
In Faver v. State, 393 So.2d 49 (Fla. 4th DCA 1981), the court affirmed the defendant's conviction because he failed to request a neutralizing instruction. However, the court stated:
We note parenthetically that if counsel had requested a jury instruction stating that [the witness] was not available to either side as a witness and that the *688 jury should draw no inference from his absence, such an instruction would have been proper.
Id. at 49.
In People v. Thomas, 68 A.D.2d 450, 417 N.Y.S.2d 278 (1979), after another witness testified regarding a potential witness's purported prior self-incriminating remarks, the defense counsel did not attempt to renew a motion to call the witness to the stand or request to have the witness's absence explained to the jury. The court held that the trial court did not err by failing to give the neutralizing instruction explaining the potential witness's failure to testify. Although the Court of Appeals[4] affirmed the Supreme Court's ruling, that court stated:
Although we conclude that no such explanatory instruction was required under the circumstances of this case, we hasten to add that there may be instances in which a proper neutralizing instruction is necessary in order to correct any misimpression that may arise in the jurors' minds from the witness' absence at trial.
People v. Thomas, 51 N.Y.2d at 467, 434 N.Y.S.2d 941, 415 N.E.2d 931.
The Pennsylvania Supreme Court treated the same issue in Commonwealth v. Greene, 445 Pa. 228, 285 A.2d 865 (1971). Although the court ultimately held that the trial court's refusal to allow a defense witness, who had invoked his Fifth Amendment right against self-incrimination prior to trial, to take the stand was proper, the court went on to note that the trial judge, if requested, should have given a neutralizing instruction calculated to reduce the danger that a jury might draw an inference from the absence of such a witness.
The United States Court of Military Appeals has also dealt with this issue. That court found that the lower court committed reversible error by refusing to accept proffered testimony and give an appropriate neutralizing instruction where a key defense witness was unavailable to testify because of a likely invocation of his Fifth Amendment right against self-incrimination. See United States v. Swoape, 21 M.J. 414 (C.M.A.1986).
At least one state, the State of Nebraska, has codified the procedure to give a neutralizing instruction. Neb.Rev.Stat. § 27-513(3) (Reissue 1995) provides:
Upon request, any party against whom the jury might draw an adverse inference from a claim of privilege is entitled to an instruction that no inference may be drawn therefrom.
The State argues that there is no authority which requires the trial court to give a "no adverse inference" or "missing witness" jury instruction when a non-testifying witness invokes his right not to testify. In support of its contention that an "adverse inference" instruction is to be given only when the defendant's right to remain silent has been infringed, the State cites as authority Carter v. Kentucky, 450 U.S. 288, 101 S.Ct. 1112, 67 L.Ed.2d 241 (1981). The State concedes in its brief that Carter deals with the defendant's failure to testify and not a key witness's invocation of his Fifth Amendment privilege. We conclude that Carter is wholly inapplicable to the issue presented in the instant case.
In the case sub judice, the defendant's counsel requested, at least three times, that the trial court give an instruction concerning the failure of Lionel Smith to be called as a witness, and the trial court denied the request. The court of appeal concluded that, read as a whole, the instructions adequately informed the jury that they were only to consider the evidence presented. However, nothing in the general charges specifically instructed the jury not to draw any negative inferences from Smith's failure to testify. The charges given by the trial court were much *689 too general and non-specific to compensate for defendant's inability to call a witness as important to his case as Lionel Smith. Under existing federal and state jurisprudence, we hold the requested instruction was correct, and the trial court erred in not giving the instruction.
The court of appeal further concluded that, even if the trial court erred by failing to give the requested neutralizing charge, the error was harmless. Harmless error analysis begins with the premise that the evidence is otherwise sufficient to sustain the conviction if viewed from the perspective of a rational factfinder and asks whether beyond a reasonable doubt the error could not have contributed to the verdict actually returned by the defendant's jury. Sullivan v. Louisiana, 508 U.S. 275, 113 S.Ct. 2078, 124 L.Ed.2d 182 (1993). In that case, the United States Supreme Court stated:
The inquiry, in other words, is not whether, in a trial that occurred without the error, a guilty verdict would surely have been rendered, but whether the guilty verdict actually rendered in this trial was surely unattributable to the error.
Id. at 2081. We hold that, under the facts presented herein, the trial court's refusal to inform the jurors that they could draw no inference from Smith's failure to testify cannot be construed as harmless error, since it cannot be established beyond a reasonable doubt, that the guilty verdict was surely unattributable to the error.
In this case, there were three witnesses to the incident in question: the defendant, the arresting officer, and Lionel Smith. The defendant's entire defense rested on the notion that it was Smith, not the defendant, who actually possessed the gun found in the vehicle. The defendant's account of the incident directly contradicted the arresting officer's account. The jury had heard testimony that Lionel Smith was present at the time of the incident. Furthermore, in its closing argument, the State made references to Smith. The District Attorney made the following statements in his closing remarks:
Lionel Smith gives the wrong name because he's got attachments out for him, and he knows it. And what else is interesting? Lionel Smith can have a gun because he is not a convicted felon.... So why is Lionel Smith going to dump the gun? Is that reasonable. Ladies and gentlemen, that's what it comes back to. When you go in the jury room, ask yourself, "What's reasonable, and who do I believe? Who do I believe?..."
Tr. 93-94). As the defendant points out, such statements made by the District Attorney asks the jury to consider questions that only Lionel Smith could answer, had he been called to testify. It would be natural for the jury to speculate as to why the defendant's friend, the only person whose testimony could corroborate the defendant's testimony, was not called to testify. The fact that the first trial resulted in a hung jury after Smith invoked his Fifth Amendment privilege in the presence of the jury illustrates the impact of Smith's presence or absence at trial.

CONCLUSION
We find that the trial court committed reversible error when it refused to instruct the jury not to draw any inference from Lionel Smith's failure to testify. Accordingly, we reverse the conviction and sentence and remand this matter to the trial court for a new trial.
KNOLL, J., dissents and assigns reasons.
TRAYLOR, J., dissents for reasons assigned by KNOLL, J.
KNOLL, Justice, dissenting.
I disagree with the majority's conclusion that the trial court committed reversible error when it refused to issue a special neutralizing instruction to the jury alerting it to Lionel Smith's failure to testify. The *690 defendant was neither entitled to such an instruction nor was the refusal on the part of the trail court reversible error. Accordingly, I respectfully dissent.
The State charged defendant with felon in possession of a handgun. At trial, the jury was presented with the testimony of the arresting officer, Sergeant Buckley, the defendant, and Samir Haddad, defendant's brother. Sergeant Buckley testified that he saw defendant pull the gun from his waistband and point it at him. The defendant testified that when he and Smith were stopped by Sergeant Buckley, Smith tossed the gun to him and told him to run. Finally, Samir testified that the car defendant and Smith were stopped in belonged to his girlfriend, that the gun was his and used for his own protection, and that he inadvertently left the gun under the seat the night before the defendant was stopped.
In charging the jury, the trial court gave the following instructions:
You must determine the facts only from the evidence presented. The evidence which you should consider consists of the testimony of witnesses and any other evidence which the Court has permitted the parties to introduce.
. . . .
You are not bound to decide any issue of fact in accordance with the number of witnesses presented on that point. Witnesses are weighed and not counted. The test is not which side brings the greater number of witnesses before you, or presents the greater quantity of evidence, but rather which witnesses and which evidence appeals to your minds as being the most convincing.
. . . .
The defendant is not required by law to call any witnesses or produce any evidence.
The majority concludes that this instruction was insufficient and that the trial court should have granted the defendant's request of a special neutralizing instruction. I disagree. For the same reason that defendant had no constitutional right to place Smith on the stand and have him invoke his Fifth Amendment privilege against self-incrimination in the presence of the jury, Haddad has no right for the trial court to give the jury a special neutralizing instruction.
As the majority correctly points out, it is impermissible to knowingly call a witness to the stand who will claim a privilege. The reason for this prohibition on both the State and the defendant is that the witness' refusal to testify on a claim of privilege, in and of itself, has no real probative significance in the determination of defendant's guilt or innocence. Further, the witness' refusal to testify could be based upon considerations wholly unrelated to the crime at issue, but could have a disproportionate impact upon the minds of the jurors and create the impression that the witness is guilty of the crime.[1] Thus, we preclude such action to prevent undue weight that may be given by a juror to the claim of privilege and due to the impossibility of cross-examination as to its assertion. State v. Day, 400 So.2d 622, 624 (La.1981). Accordingly, once a witness has appeared in court and refuses to testify, the defendant's Sixth Amendment rights are satisfied and the trial court was under no obligation to grant defendant's request to place the witness on the stand to invoke the privilege in the presence of the jury.
For the same reasons, I believe the trial court correctly refused to give a special neutralizing instruction. By requiring a neutralizing instruction, the majority is allowing the defendant, in essence, to accomplish indirectly that which we have repeatedly held could not be done directly, *691 i.e., an attempt to substantially put before the jury information that a witness has invoked his Fifth Amendment privilege to testify. Nothing in the proposed neutralizing instruction prevents speculation on the part of the jury. Instead, by highlighting the absence of this witness, the instruction alerts the jurors to this omission and fosters the speculation that the majority attempts to remedy. I believe by omitting a specific reference to a witness who has invoked his Fifth Amendment privilege and giving the general instruction of the law, the trial court averted any unwarranted and harmful speculation by the jurors that the witness is guilty of the alleged crime. See, e.g., United States v. Griffin, 66 F.3d 68, 71 (5th Cir.1995); Commonwealth v. Gagnon, 408 Mass. 185, 557 N.E.2d 728, 737 (1990); People v. Thomas, 51 N.Y.2d 466, 434 N.Y.S.2d 941, 415 N.E.2d 931, 934-95 (1980); and cases cited in each. The United States Court of Appeals for the Fifth Circuit has stated in refusing to allow just such a "neutralizing instruction," "`neither side has the right to benefit from any inferences the jury may draw simply from the witness' assertion of the privilege.'" Griffin, 66 F.3d at 71 (quoting United States v. Johnson, 488 F.2d 1206, 1211 (1st Cir.1973)).
Furthermore, even assuming arguendo that such an instruction should have been given, the refusal on the part of the trial court was harmless error. The harmless error rule test whether the guilty verdict actually rendered in the case was surely unattributable to the alleged error. The test is not, however, whether a guilty verdict would surely have been rendered in a trial without the alleged error. Sullivan v. Louisiana, 508 U.S. 275, 279, 113 S.Ct. 2078, 124 L.Ed.2d 182 (1993). The jury clearly found Sergeant Buckley's testimony credible and based its verdict of guilty on that testimony. Given the testimony and the trial court's instruction, the guilty verdict rendered in this particular trial is surely not attributable to the trial court's refusal to give a neutralizing instruction. Id.

ON REHEARING
Rehearing denied.
LEMMON, J., Concurring in the Denial of the Application for Rehearing.
On application for rehearing, the State argues that the trial court properly refused defense counsel's request for an instruction informing the jury that the defense had called the eyewitness and that the witness was not permitted to testify because of a court ruling. The State's characterization of defense counsel's request is correct, as far as it goes, but is not persuasive when the request is considered in its entirety.
Prior to trial, the court properly ruled that the witness would not be required to invoke the Fifth Amendment in front of the jury. Defense counsel, both prior to trial and during trial, argued that because the witness was defendant's friend and was a companion in the car, the jury would draw an adverse inference from the witness' failure to testify unless the jury was informed there was a reason for the witness' absence. While defense counsel could have articulated the request more precisely (or could have filed a written request for a specific neutralizing instruction), counsel clearly alerted the trial judge to counsel's legitimate fear of the jury's drawing an adverse inference in the absence of any instruction by the court. Thus counsel implicitly requested the court to instruct the jury not to draw an adverse interest, against either party, from the witness' failure to testify.
Under these circumstances, the majority correctly decided that the trial court erred in failing to provide any instruction to the jury regarding the witness' failure to testify.
KIMBALL, Justice, concurring in the denial of rehearing.
In its application for rehearing, the State argues that "the jury would not have *692 been instructed against drawing inferences from the witness's absence" because the instruction requested by the defense failed to indicate that the jury could not draw any inferences from the witness's failure to testify. The opinion makes it clear, however, that the neutralizing instruction required in this case should have informed the jurors that they could draw no inferences from the witness's failure to testify. Moreover, the opinion cannot be read to require that the jurors be told that it was the defendant, rather than the State, who would have called the witness to testify at trial. Because the opinion adequately resolves the issue presented in this case, I concur in the majority's denial of rehearing.
NOTES
[*] Victory, J., not on panel. See Rule IV, Part 2, § 3.
[2] To support the conviction of possession of a firearm by a convicted felon, the State must prove beyond a reasonable doubt that: (1) defendant possessed a firearm; (2) defendant was convicted of a prior enumerated felony within the ten-year statutory time limitation; and (3) general intent to commit the offense. State v. Segure, 96-1275 (La.App. 4 Cir. 10/1/97), 700 So.2d 1149, and cases cited therein. Possession must be intentional. Segure, supra, and cases cited therein. General intent is shown when the proof shows that the perpetrator carried on his person a firearm. State v. Woods, 94-2650 (La.App. 4 Cir. 4/20/95), 654 So.2d 809, writ denied, 95-1252 (La.6/30/95), 657 So.2d 1035. When the perpetrator has not carried the firearm on his person, the State must show that the defendant's intent amounted to an intent to possess rather than a mere acquiescence to the fact that there was a firearm in his presence. Id. Mere presence in an area where contraband is found or mere association with an individual found to be in possession of such does not necessarily establish possession. State v. Viera, 449 So.2d 644 (La.App. 4 Cir.1984), writ denied, 450 So.2d 962 (La.1984).

Officer Buckley testified that he saw the gun in the defendant's possession, and in fact, the defendant pointed it at him. However, he later testified that he retrieved the gun from the floor of the vehicle and not from the defendant's person. We also note that the defendant was not charged with assault for allegedly pointing a weapon at the police officer.
[3] The court ultimately affirmed the defendant's conviction because there was no showing that the witness's testimony would corroborate the defendant's version of the events.
[4] The name "Supreme Court" is misleading. The Supreme Court is the court of original jurisdiction in the State of New York. See, N.Y. Const. art. VI, § 7.
[1] That such testimony can lead to a disproportionate impact upon the minds of the jurors and create the impression that the witness is guilty of the crime is seen in this case by the results of defendant's first trial.